**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CONSTRUCCIONES INTEGRALES | § | |
| DEL CARMEN, SA.A DE C.V., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3427 |
| | § | |
| | § | |
| GOODCRANE CORPORATION, *ET AL.* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In this breach-of-contract case, Construcciones Integrales del Carmen, S.A. de C.V. ("CICSA"), a Mexican variable stock corporation, sued Goodcrane Corporation, ABC & P, LLC ("ABC"), Benjamin M. Almeda Jr., Benjamin B. Almeda III, Patrick B. Almeda, and Levi Romero, II. CICSA alleged that it bought a crane from Goodcrane and made a downpayment, but the crane was never delivered. CICSA asserted claims for breach of contract, conversion, money had and received, fraud, misrepresentation, theft, conspiracy, and aiding and abetting. (Docket Entry No. 1). ABC, a Washington company, has moved to dismiss for lack of personal jurisdiction. (Docket Entry No. 19). ABC asserts that it was not a party to the contract at issue and that it lacks minimum contacts with Texas. *Id.* CICSA responded, asserting that ABC is subject to general jurisdiction in Texas, where it conducts business and where its representatives, Patrick and Benjamin Almeda III, reside. (Docket Entry No. 32).

Based on a careful review of the pleadings, the motion and response, the parties'

submissions, and the applicable law, this court denies the motion to dismiss.  The reasons are set out below.

I.      **Background**

The evidence submitted by the parties shows that ABC is a Washington limited liability company in the business of buying and leasing real estate.  (Docket Entry 32, Ex. 1, Certificate of Formation).  ABC owns two properties in Texas and one in Washington State.  (Docket Entry 32, Ex. 2, Deposition of Patrick B. Almeda, at 9-15).  The Texas properties are at 12221 Almeda Road and 12218 Robin Blvd. in Houston.  The properties are worth approximately $5 million each.  (*Id.*, at 29:23–30:4).  These properties are under a five-year lease to Goodcrane, a Texas corporation with its principal place of business in Houston, Texas.  Goodcrane does not pay ABC rent for the properties.  (Docket Entry No. 32, Ex. 3, Deposition of Benjamin Almeda, III, at 18:3–20:12).  Goodcrane does pay the property taxes, maintenance fees, and utilities.  (*Id.*, at 20:15–19).  Goodcrane uses these properties for its business of designing and manufacturing cranes and deck equipment for the marine, fishing, offshore, and oil industries. (Docket Entry No. 1; Docket Entry 32, Ex. 4, Lease Agreement).  Goodcrane previously leased and used ABC's property in Washington State under a similar arrangement, but there is no current tenant or lease for that property.  (Docket Entry No. 32, Ex. 2, Deposition of Patrick Almeda, at 10:20–11:3).

The only members, agents, or employees of ABC are Patrick Almeda and Benjamin Almeda, III.  Both live in Pearland, Texas.  Patrick Almeda is ABC's registered agent and managing member.  (Docket Entry No. 19, at 4).  He also works for Goodcrane as an engineer. Benjamin Almeda, III used to be the president of Goodcrane in Houston but no longer works there.  Neither individual has challenged the exercise of personal jurisdiction over them by this Texas court.

In 2007, ABC purchased a house in Pearland, Texas.  In that purchase, ABC held itself out as a Texas limited liability company in the general warranty deed.  (Docket No. 32, Ex. 5, 6).  The Almedas' father, Benjamin Almeda Jr., bought the house from ABC in early 2009.  Patrick Almeda lives in the next-door house, and Benjamin Almeda, III lives nearby.

The Almeda brothers are the only individuals responsible for conducting ABC business. (Docket Entry No. 32, Ex. 2, Deposition of Patrick Almeda, 52:9–12).  Patrick Almeda testified in his deposition that he is not aware of a physical address or phone number for ABC.  (*Id.*, at 52:9–18; 60:19–21).  ABC does not have an office in Washington.  Patrick Almeda has received mail addressed to ABC at his home in Pearland.  (*Id.*, at 52:9–12).  The 2007 property tax statement for the 12218 Robin Blvd. property that ABC leases to Goodcrane was sent to ABC at Patrick Almeda's Texas home address.  Almeda testified in his deposition that he was unsure who decided to use his home address as ABC's address in the property records.  Almeda testified that he did not recall receiving the 2007 property tax statement but assumed that if he had, he would have given it to Levi Romero, who paid the taxes on behalf of Goodcrane.  (*Id.*, at 34:4–13).

On September 10, 2007, CICSA contracted with Goodcrane to buy an ABS-certified 500-ton knuck crane.  Goodcrane was to construct and deliver the crane to CICSA "FOB terms, Houston, Texas plant" for a final purchase price of $7,700,000.  (Docket Entry No. 1, Ex. 2, Contract No. 07177-091007).  The crane was to be installed on the *M/V North Ocean 102*, a vessel chartered by CICSA.  Under the contract, CICSA was to make a downpayment of 65% of the purchase price, or $5,005,000.  Another 25%, or $1,950,000, was to be paid 16 weeks after Goodcrane received the initial down payment.  The final 10%, or $770,000, was to be paid after shop testing was done.  *Id.* The crane was to be delivered in June 2008.

3

On September 14, 2007, CICSA wire transferred Goodcrane $5,005,000.  (Docket Entry No. 1).  In the complaint, CICSA alleged that on September 20, 2007, Goodcrane and all the defendants knew that CICSA had a charter contract for the *North Ocean 102*, knew the value of that contract, and knew that the crane was a key element of the vessel's gear.  CICSA further alleged that Goodcrane knew that delays in the delivery of the crane would result in damages to CICSA.  (*Id.*).  CICSA alleged that in January 2008, Goodcrane responded to requests for information about the crane with "promises and assurances of performance that were false and misleading, specifications that were incomplete, incorrect, or contradictory, and were intended to lull CICSA into believing their crane was or has been properly designed and engineered, and was in the process of being built for timely delivery."  (*Id.*).  CICSA alleged that the crane was not timely completed and was never delivered and that Goodcrane breached the contract by failing to deliver the crane and by providing incomplete, incorrect or contradictory information about the crane.  (*Id.*).  CICSA filed this lawsuit after Goodcrane refused to return the $5,005,000 down payment.  CICSA alleged that ABC is liable for aiding and abetting Goodcrane's actions.  CICSA alleges that ABC is not a separate corporate entity and seeks to hold it liable as an alter ego of Goodcrane.  ABC's motion to dismiss for lack of personal jurisdiction followed.

## II.     The Applicable Legal Standards

### A.     Rule 12(b)(2)

ABC moves to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction.  *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted).  "The court may determine the jurisdictional issue by receiving

affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs.*, *Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co.*, *LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)) (additional citations omitted). The court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001).

### B.    Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Delgado v. Reef Resort, Ltd.*, 364 F3d 642, 644 (5th Cir. 2004). The Texas long-arm statute confers jurisdiction to the limits of due process. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008); *see* TEX. CIV. PRAC. AND REM. CODE ANN. § 17.041–.045; *see also Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). Due process permits the exercise of personal jurisdiction over a nonresident defendant when the defendant has "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson*, 20 F.3d at 647). CICSA has the burden

5

of showing personal jurisdiction over ABC.

The "minimum contacts" aspect of the analysis can be established through "contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Wilson*, 20 F.3d at 647. A court may exercise specific jurisdiction when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Gundle Lining Const. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 446 U.S. 408, 414 n.8 (1984); *Religious Tech.*, 339 F.3d at 375; *Quick Techs., Inc.*, 313 F.3d at 344). To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Gundle Lining Const.,* 85 F.3d at 205; *Helicopteros Nacionales*, 466 U.S. at 414 n.8. Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzeqicz*, 471 U.S. 462, 475 (1985). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc*., 9 F.3d 415, 419 (5th Cir. 1993) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Specific jurisdiction requires a sufficient nexus between the nonresident defendant's contacts with the forum and the cause of action. *Rittenhouse v. Mabry*, 832 F.2d 1380, 1390 (5th Cir. 1987). As part of the minimum contacts analysis, a court evaluates any contracts, the parties' "actual course of dealing," and the parties' "prior negotiations and contemplated future consequences." *Burger King*, 471 U.S. at 479.

6

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state before a court may exercise general personal jurisdiction. *Helicopteros Nacionales*, 466 U.S. at 414-15; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir.1987). The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed to support specific jurisdiction. *Dalton v. R & W Marine*, 897 F.2d 1359, 1362 (5th Cir.1990). "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.'" *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart*, 772 F.2d at 1191 (additional citations omitted)).

In this case, CICSA does not argue that ABC is subject to specific jurisdiction in Texas. The issue is general personal jurisdiction.

## III.   Analysis

### A.   Minimum Contacts

ABC argues that this court lacks general personal jurisdiction because ABC is not incorporated in Texas and does not conduct business in Texas. ABC concedes that it owns property in Texas, but asserts that it does not rent or sell these properties for profit. ABC asserts that it is a wholly separate corporate entity from Goodcrane.

CICSA argues that this court has general jurisdiction over ABC because "its officers conduct company business" in Pearland, Texas. CICSA contends that general jurisdiction applies because ABC has conducted its business from Texas and because ABC holds itself out as having a principal place of business in Texas.

7

The Supreme Court has provided guidance on general jurisdiction principles.  In *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)*,* the Court upheld the district court's exercise of general personal jurisdiction in Ohio over a Philippine corporation.  The corporation's president and general manager relocated to Ohio during the Japanese occupation of the Philippine Islands.  *Id.* at 447–49.  While in Ohio, the president maintained a corporate office where he kept the corporation's records, conducted directors' meetings, and made all key business decisions.  *Id.* at 447–48.  The corporation also distributed salary checks drawn on two Ohio bank accounts and engaged an Ohio bank to act as a transfer agent.  *Id.* at 448.  In light of these activities, the Court held that Ohio could exercise general personal jurisdiction over the corporation because the president had "carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company."  *Id.*

The Supreme Court elaborated on the principle of general jurisdiction in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984).  In that case, a helicopter accident in Peru killed American citizens and their relatives sued the foreign helicopter owner and operator, Helicopteros, in Texas state court.  The Court concluded that because the accident did not arise out of or relate to the foreign corporation's activities in the forum state, specific personal jurisdiction did not apply.  *Id.* at 415.  With respect to general personal jurisdiction, the Court found that Helicopteros had never been authorized to do business in Texas, never had an agent for service of process in Texas, never solicited business in Texas, never signed a contract in Texas (although it had contracted with Texas residents several times), never had any employee based in Texas, never owned any real property in Texas, never maintained an office in Texas, did not maintain any records in Texas, and did not have any shareholders in Texas.  *Id.* at 411–12.  Helicopteros, however, did

8

have numerous other contacts with Texas.  For seven years, Helicopteros purchased helicopters, spare parts, and accessories from Bell Helicopters in Texas; sent prospective pilots to Texas training; and sent its management and maintenance personnel to visit Bell Helicopters in Texas.  *Id.* at 411. The Court held that Helicopteros's Texas contacts did not "constitute the kind of continuous and systematic general business contacts the Court found to exist in *Perkins*." *Id.* at 416.  "[P]urchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Id.* at 417.

Following *Helicopteros*, the Fifth Circuit has established a general personal jurisdiction test that requires extensive contacts between the nonresident defendant and the forum state.  *See Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir.2001) (citation omitted).  The contacts must be "sufficiently systematic and continuous to support a reasonable exercise of jurisdiction."  *Stuart v.  Spademan*, 772 F.2d 1185, 1191 (5th Cir.  1985).  "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . . ." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (citations omitted).  "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (citation omitted).

In *Submersible*, the court held that a Mexican company lacked minimum contacts with Mississippi sufficient for the exercise of general jurisdiction.  249 F.3d at 420.  The general jurisdiction claim was based on the Mexican company building a marine drilling rig in Pascagoula, Mississippi.  *Id.* at 416.  The court held that "in this case, Central, a Mexican company that has its headquarters in Mexico and that does business almost exclusively in Mexico, made contact with

Mississippi only by virtue of its arrangement to construct one marine drilling rig in a shipyard in Mississippi. These contacts with Mississippi are even less substantial than those of the Colombian company with Texas in Helicopteros." *Id.* at 420.

Similarly, in *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 612 (5th Cir. 2008), the court held that general personal jurisdiction was lacking over a Canadian company. The company had purchased over $5.2 million worth of goods from Texas vendors in the five years before the lawsuit; was a party to a Hosting Services Agreement and a Software Licensing Agreement with a Texas corporation; employed two Texas residents who performed work from their homes in Texas; and had a former corporate director who lived in Texas. The court held that these contacts were insufficient for general personal jurisdiction in Texas. *Id.* The $5.2 million in goods purchased from Texas was only 1% of the company's total business. The Hosting Services Agreement was governed by New York law. The Texas employees did not work with Texas customers but merely worked from home and reported to supervisors located in Toronto, Canada. *Id.* at 613. Additionally, unlike in *Perkins*, the business director merely resided in Texas and did not conduct board business in Texas. *Id.*

By contrast, in *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 777 (5th Cir. 1986), the court upheld general jurisdiction over the defendant based on his extensive contacts with Texas. "Harvey attended college and was formerly employed in Texas; (2) Harvey owns real estate in Texas, specifically a condominium in Houston; (3) Harvey has traveled to Texas on numerous occasions to visit his children; (4) Harvey frequently visits Texas for recreation; and (5) Harvey has transacted a great deal of business in Texas." *Id.* at 779. Harvey invested in an oil and gas drilling venture with the plaintiff, a Texas oil and gas corporation. The corporation sued Harvey, an Oklahoma

resident, to recover his unpaid share of the venture's operating expenses. In addition to the oil and gas drilling venture with the plaintiff, Harvey had extensive business dealings with Permian Records of Dallas, Texas. Harvey had been a director of Permian Records, had invested $250,000.00 in the company, and had attended directors' meetings in Dallas. *Id.* at 779. Finally, Harvey was the sole shareholder of Marlin Oil Company, which had drilled several wells in Texas and was involved in litigation in Texas. *Id.* Harvey had traveled to Texas on several occasions in connection with the activities of Marlin Oil. *Id.* The court held that none of these Texas contacts, standing alone, would support general personal jurisdiction over Harvey by a Texas court, but those contacts taken together were sufficient. *Id.* at 779. The court noted that the "instant controversy arises out of one of Harvey's business contacts with Texas. While that contact was not sufficient to support an exercise of specific jurisdiction, the fact that some connection exists between Harvey, the forum, and the controversy involved in the instant case is nevertheless relevant to our determination." *Id.* Harvey's contacts with Texas were not "random," "fortuitous," or "attenuated," but instead demonstrated that Harvey had "maintained constant and extensive personal and business connections with Texas throughout his adult life." *Id.* The court held that although the question was a close one, Harvey's Texas contacts supported the exercise of general personal jurisdiction by a Texas court. *Id.*

Other circuits have upheld the exercise of general personal jurisdiction when the nonresident defendant conducted substantial business activities in the forum state. In *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000), the court found general jurisdiction based on the defendant's employment of multiple distributors in the state and generation of millions of dollars in annual revenues from in-state sales. In *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996), the court held that the nonresident defendant had sufficient contacts with

11

Vermont to support general jurisdiction.  Over a four-year period, the defendant's contacts with Vermont included $4 million in sales, ongoing relationships with five authorized dealers for its products in the state, product support for those dealers, national advertising that reached Vermont, direct marketing to at least three Vermont firms, and more than one hundred visits by employees to Vermont.  *Id.* at 570.  The defendant, however, owned no property in Vermont and did not control its authorized dealers there.  *Id.* at 572.  The court acknowledged that any one of these contacts alone would be insufficient, but held that "when taken together, [the contacts] are sufficient to establish general jurisdiction."  *Id.* at 570 (emphasis in original)[1]; *see also Coremetrics*, *Inc. v. Atomic Park.com*, *LLC*, 370 F.Supp.2d 1013, 1019 (N.D. Cal. 2005) (holding that court had general jurisdiction over nonresident defendant because of the "substantial proportion of sales made to California by" the defendant).  By contrast, if the defendant's business activities in the forum state are a small percentage of its overall business, general jurisdiction is lacking.  *See*, *e.g.*, *Hockerson-Halberstadt*, *Inc. v. Propet USA*, *Inc.*, 62 Fed. Appx. 322, 337 (Fed. Cir. 2003) (concluding that there was no general jurisdiction over defendant who made only 0.00008 percent of its sales to forum state); *Injen Tech. Co. Ltd. v. Advanced Engine Mgmt.*, 270 F.Supp.2d 1189, 1194 (S.D. Cal. 2003) (noting that sales by defendant to forum state, which "account [ed] for only 2% of its total business, are not the kind of 'systematic and continuous' contacts that would warrant the exercise of general jurisdiction").

 Some courts have held that general jurisdiction is appropriate when the nature of a

---

[1]  The court nevertheless dismissed the case because jurisdiction would not comport with traditional notions of fair play and substantial justice.  Neither the plaintiff nor the defendant resided in Vermont, the state of Vermont had no discernable interest in the case, and the plaintiff's only interest in Vermont as a forum seemed to be a generous statute of limitations.  *Id.*  at 570.

defendant's forum-state contacts is central to its business.  In *Lakin v. Prudential Securities*, 348 F.3d 704 (8th Cir. 2003), the defendant was a federally chartered savings bank with its principal place of business in Georgia.  The defendant was sued in Missouri for claims arising from a multimillion dollar, multistate fraud.  The court held that the Georgia-based defendant's contacts with Missouri were continuous and substantial, based on the fact that its $10 million home-equity loan portfolio in the state implied multiyear lending relationships with "hundreds, if not thousands of Missouri residents."  *Id.* at 709.  The court observed that although the defendant did not conduct a large percentage of its business in Missouri, the home-equity market in that state appeared to be central to the defendant's business.  The court was unable to tell from the record whether the loans, which were made in Georgia, were in fact secured by property in Missouri, which was likely.  The court remanded for additional jurisdictional discovery, concluding that if the loans were secured by Missouri property, general jurisdiction would be appropriate because the home-equity market there would be central to the defendant's business.  *Id.* at 709–710; *see also Provident Nat'l Bank v. Lehman Mgmt. Co.*, 819 F.2d 434, 438 (3d Cir. 1987) (holding general jurisdiction by a Pennsylvania court over a nonresident defendant proper because although the defendant had no property in Pennsylvania and conducted no advertising and only a small percentage of its business in that state, "the nature of [defendant's] contacts with Pennsylvania . . . was central to the conduct of its business.").

      In the present case, ABC's forum contacts are more analogous to those of the defendants in *Perkins* and *Holt* than in *Submersible* or *Johnston*.  As in *Perkins*, in which the company relocated to Ohio, ABC relocated to Houston after Goodcrane moved its operations to Texas.  In their depositions, Patrick and Benjamin Almeda, III testified that they live in Texas and are the only

13

members or managers of ABC and the only individuals who conduct ABC business.  Patrick Almeda acknowledged that mail addressed to ABC was sent to his home in Texas.  The record evidence supports the conclusion that although ABC was incorporated in Washington, its principal – and only – place of business is in Texas.  Similar to *Perkins,* in which the director did most of his work from the Ohio office, the tax records and lease agreements show that ABC conducts its business in Houston.  Moreover, as in *Holt,* in which the defendant owned real estate in Texas, ABC owns two Texas properties and ABC's only business is to own and lease property.  When this suit was filed, ABC had three properties, one in Washington and two in Texas.  ABC did not have a tenant or lease for its Washington property.  ABC leased its two Texas properties to Goodcrane, a Texas corporation.  ABC's only business activities are located in Texas.  And ABC's only representatives authorized to conduct business on behalf of the company live and work in Texas.  The nature of ABC's Texas contacts is central to the conduct of its business.  Unlike *Submersible*, in which the only forum-state contact was one contract and the defendant's headquarters and business were in Mexico City, nearly all of ABC's business is in Texas.  Moreover, unlike *Johnston,* in which the bulk of the nonresident defendant's business was done in Canada with a former director who resided but did not work in Texas, the bulk of the business done by ABC is in Texas and the Almedas actively manage the company from a Texas residence.  ABC has the required minimum contacts with the State of Texas for general personal jurisdiction.

### B.    Fair Play and Substantial Justice

If minimum contacts are shown, jurisdiction exists unless the nonresident defendant can make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.  *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 215 (5th Cir.1999).  In

making this determination, courts consider: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolutions of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

Subjecting ABC to jurisdiction in a Texas court would not offend traditional notions of fair play and substantial justice. The Court in *Perkins* concluded that "if an authorized representative of a foreign corporation be physically present in the state of the forum and be there engaged in activities appropriate to accepting service or receiving notice on its behalf, . . . there is no unfairness in subjecting that corporation to the jurisdiction of the courts of the state through such service of process upon that representative." 342 U.S. at 445. Similarly, in *Holt*, the court found that because the defendant was in Texas for a golf tournament during his trial, the burden of litigating in Texas was slight. 801 F.2d at 780. The burden on ABC of litigating this case in Texas is similarly slight because ABC's sole members, Patrick and Benjamin Almeda, III, live and work in Texas and have consented to personal jurisdiction individually. Patrick Almeda is the registered agent of ABC and conducts business activities on behalf of ABC in Texas. This state has an interest in adjudicating this dispute because ABC does business in Texas with a Texas company and is directed by Texas residents. *See Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003). Given that Texas has a legitimate interest in adjudicating this case and that the burden on the defendant is slight, the exercise of jurisdiction in Texas does not offend fair play or substantial justice.

## IV.    Conclusion

ABC has minimum contacts with Texas sufficient to justify general personal jurisdiction in a Texas court.  ABC's motion to dismiss for lack of personal jurisdiction is denied.

SIGNED on June 30, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

16